UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIJAH BURKE,

Plaintiff, Case No. 1:11-cv-1044

v. Honorable Robert Holmes Bell

D. LAWRENCE et al.,

Defendants.
____________________________________/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Elijah Burke presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF). He sues the following LCF employees: Food Service Assistant Director D. Lawrence; Classification Director S. Mittlestadt; and Food Service Supervisor Leaders (unknown) O'Dell and (unknown) Whitehead.

Plaintiff's complaint consists of a series of conclusory legal claims, together with his demands for relief. (Compl., docket #1.) In an attached affidavit, Plaintiff sets forth his factual allegations. (Pl. Aff. in Supp. of Compl., docket #2.)

According to the factual allegations of the affidavit, Plaintiff was employed for ten years in the food service department at LCF. On April 15, 2011, Plaintiff was issued a Class II misconduct for theft, after he was found leaving work with several slices of cheese. When he got to work the following day, April 16, 2011, Plaintiff was informed by food service officer Robinson that he had been "laid in"[1] from work by Defendant Lawrence, pending the outcome of his misconduct hearing. Plaintiff attempted to explain that, under prison policy, he could only be laid in by the warden or his designee and only if he was deemed a threat to the safety or security of the prison, citing MICH. DEP'T OF CORR., Policy Directive 05.01.100. Plaintiff therefore contended that his lay-in was in violation of MDOC policy. Robinson reportedly stated, "It was not my choice, it was the Assistant Director Lawrence's call." (*Id.*, ¶ 10, Page ID#8.) Plaintiff complains that he never received a written notice from the classification director that he was being laid in.

---

[1]The term "laid in" refers to a prisoner being temporarily suspended from his prison job assignment. Prisoners charged with misconducts may be laid in pending the misconduct hearing. MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ AA (eff. Nov. 1, 2010) (superseded).

On April 16, 2011, Plaintiff wrote a complaint to Deputy Warden Hoffner regarding Defendants' allegedly improper application of MDOC policy. On April 18, 2011, while he was going through the food line, Plaintiff spoke with Defendant Lawrence, asking, "Why am I being removed from my job, against the dictates of policy. Surely, I'm not a threat to the safety and security of the facility." (*Id.*, ¶13.) Lawrence replied, "Well Mr. Burke, you writing and complaining up front (i.e., Deputy Warden's Office), didn't make your situation any better." (*Id.* at ¶ 14.) On April 21, 2011, Plaintiff received a Prisoner Program Work Assignment Evaluation notice, recommending that he be terminated from food service, because he had been found guilty of misconduct. The notice was signed by Defendants Whitehead and Lawrence. (*Id.*, ¶ 17, Page ID#9.) Later that day, Plaintiff received a notice from Defendant Classification Director Mittlestadt, informing him that he was being permanently removed from the food service hiring pool because he had two or more guilty findings on theft misconduct charges while employed in food service. (*Id.*, ¶ 18; *see also* Ex. A5 to Aff., Page ID#17.) Plaintiff complains that his termination was in violation of policy and that he had no prior notice that he could be permanently removed from food service employment for two theft misconducts. He also alleges that Defendants' actions were taken in order to eliminate Plaintiff's eligibility for bonus pay, which was no longer available to food service employees hired after December 4, 2008. In addition, he contends that he was terminated in retaliation for his April 16 complaint to Deputy Warden Hoffner about how the classification policy was being applied.

Plaintiff filed a Step I grievance on April 25, 2011, alleging that Defendants had conspired with one another to retaliate against him. On May 27, Defendant Classification Director Mittlestadt posted a memorandum notice, which stated that "any prisoner found guilty of a

misconduct for theft while on food service assignment, will never be hired back at LCF." (*Id.*, ¶ 24, Page ID#10.) Plaintiff complains that Defendant Lawrence knew that Plaintiff's job was very important to him and that Plaintiff used his wages to pay for his phone calls and to pay his attorney.

In his complaint, Plaintiff asserts that Defendants actions violated his right to petition the government under the First and Fourteenth Amendments of the United States Constitution and under the Petition Clause of the Michigan Constitution, MICH. CONST. 1963, art. 1, § 3. He also alleges that Defendants' actions amounted to gross negligence and intentional infliction of emotional distress under state law.

For relief, Petitioner seeks a declaratory judgment, together with compensatory and punitive damages.

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Retaliation**

The sole federal claim expressly listed in Plaintiff's complaint is that Defendants retaliated against him for complaining about the allegedly improper enforcement of MDOC policy, and they conspired to do so. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming that Plaintiff's allegations establish the first two prongs of the test, Plaintiff fails to allege facts supporting the motivation prong. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff's allegations of retaliation are unsupported by the facts alleged in the complaint. He appears to allege that, because the suspension and ultimate termination from his position were close in time to when he complained to Deputy Warden Hoffner and filed his grievance about the misapplication of policy, Defendants' motive must have been retaliatory.

While temporal proximity may, in some circumstances, be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner*, 89 F. App'x at 580. Moreover, Plaintiff's own allegations about the timing of the events belies any inference of retaliatory motive. Plaintiff acknowledges that he was issued a misconduct ticket for theft on April 15, 2011, for which he ultimately was convicted. Plaintiff does not dispute that he committed the misconduct. He was immediately suspended from his position by Defendants O'Dell and Lawrence on the morning of April 16, 2011, pending the outcome of the misconduct charge. Plaintiff's first alleged protected conduct – the writing of the complaint to Assistant Deputy Warden Hoffner – did not happen until later in the day on April 16, after Plaintiff had been suspended. Although Defendant Lawrence told Plaintiff that his complaining would not help his situation, the comment was not made until April 18. It therefore cannot support a conclusion that O'Dell's and Lawrence's original decision to suspend Plaintiff was retaliatory. In sum, the decision to suspend Plaintiff from his position could not have been motivated by his subsequent complaint to Deputy Warden Hoffner. Moreover, Plaintiff did not file a grievance until April 25, 2011, four days after he was permanently terminated from food service. As a consequence, the filing of the grievance could not have served as the motive for either the suspension or the termination.

Further, Plaintiff alleges insufficient facts to indicate that he was terminated for complaining to Deputy Warden Hoffner. Defendant Lawrence's comment regarding Plaintiff's complaint to the Deputy Warden is far too thin a thread on which to support a "reasonable inference"

that [Defendants are] liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. Prior to Plaintiff's engaging in any protected conduct, Defendants Lawrence and O'Dell already had determined that the charge of theft warranted immediately suspending Plaintiff. As discussed, their motive could not have been retaliatory. The fact that Plaintiff was immediately terminated once he was found guilty of the same charge strongly suggests that Defendants Lawrence and Whitehead were acting with the same motivation in recommending Plaintiff be terminated as Lawrence and O'Dell were in recommending he be suspended.

Moreover, while Defendant Lawrence was one of two officials who made the recommendation that Plaintiff be terminated for having two theft misconducts, he was not the ultimate decisionmaker in the termination. Instead, Defendant Classification Director Mittlestadt made the determination that Plaintiff would be terminated and permanently removed from the food-service-worker pool. A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999).

Plaintiff seeks to overcome this problem by making a conclusory allegation that all Defendants conspired to retaliate. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez*, 826 F.2d at 1538; *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must

show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).

Plaintiff's allegations of conspiracy are both conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, involve individual determinations made by multiple officials. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them to retaliate against Plaintiff. Plaintiff relies entirely on a highly attenuated inference from the mere fact that he was disciplined by more than one prison official. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed ... behavior." *Iqbal*, 129 S. Ct. at 1250. In light of the far more likely possibility that the Defendants' actions were unrelated to a conspiracy to retaliate, Plaintiff fails to state a plausible claim of conspiracy.

In the face of Plaintiff's tenuous and conclusory allegations of retaliation, the remaining facts alleged by Plaintiff strongly support a conclusion that his suspension and eventual termination from his job were motivated by the undisputed fact that he twice had been convicted of

theft from food services during the course of his employment. While Plaintiff attempts to argue that he was not informed of such a rule and that the policy could or should have been interpreted differently, his own recitation of the facts evidences that Defendants acted with an entirely legitimate motivation. Indeed, the legitimacy of the motivation is further supported by Plaintiff's allegation that, only a month after Plaintiff's termination, Defendant Mittlestadt posted an even stricter policy, under which any food service worker would be permanently terminated from food service at LCF if found guilty of theft on even one occasion.

For all these reasons, Plaintiff fails to state a claim of retaliation against any Defendant.

**B. Due Process**

Although Plaintiff does not formally allege a violation of due process, most of his allegations address the notice, procedures and fairness of the decisions to suspend and terminate his employment, which arguably implicate the Due Process Clause of the Fourteenth Amendment. Specifically, Plaintiff argues that Defendants' actions did not comply with MDOC policy because, although the policy allowed a prisoner to be temporarily suspended from his employment for any misconduct, in the case of a Class II misconduct, the action could only be taken "[w]ith prior approval of the Warden or designee . . . ." MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ AA. Plaintiff also argues that his permanent termination from food service is only authorized under MDOC policy when the classification director determines that reassignment would be a threat to the safety or security of the institution, a finding he suggests is unreasonable. *Id.*, ¶ BB. In addition, he complains that he never received written notice that he was being suspended during the pendency of the misconduct proceedings. He also alleges that he received no notice that a second theft

conviction would result in his termination from food service. Finally, he asserts that Defendants were motivated by a desire to eliminate a highly compensated employee from their payroll.

Plaintiff fails to state a due process claim for several reasons. First, a defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff had no interest in his prison employment that was protected by the Due Process Clause. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Further, "as the Constitution and federal

law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the suspension or termination of his prison employment.

**C. State-Law Claims**

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his claims under the Michigan constitution or state tort law, the Court declines to exercise jurisdiction. The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991). Plaintiff's state-law claims therefore will be dismissed without prejudice.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: October 27, 2011

/s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE