UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ELIJAH BURKE,

        Plaintiff,          Case No. 1:11-cv-1044

v.         Honorable Robert Holmes Bell

D. LAWRENCE et al.,

        Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

      On October 27, 2011, applying these standards, the Court dismissed Plaintiff's complaint against all Defendants for failure to state a claim. Plaintiff appealed the dismissal. On June 26, 2012, the Sixth Circuit affirmed in part and reversed in part, remanding the case for further proceedings.

Having now conducted a second review of the complaint in light of the Sixth Circuit's determination and again applying the recited standards, the complaint will be dismissed against Defendants O'Dell, Whitehead and Mittlestadt. The Court will serve the complaint against Defendant Lawrence.

**Discussion**

I.   Factual allegations

Plaintiff Elijah Burke presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF). He sues the following LCF employees: Food Service Assistant Director D. Lawrence; Classification Director S. Mittlestadt; and Food Service Supervisor Leaders (unknown) O'Dell and (unknown) Whitehead.

Plaintiff's complaint consists of a series of conclusory legal claims, together with his demands for relief. (Compl., docket #1.) In an attached affidavit, Plaintiff sets forth his factual allegations. (Pl. Aff. in Supp. of Compl., docket #2.)

According to the factual allegations of the affidavit, Plaintiff was employed for ten years in the food service department at LCF. On April 15, 2011, Plaintiff was issued a Class II misconduct for theft, after he was found leaving work with several slices of cheese. When he arrived at work the following day, April 16, 2011, Plaintiff was informed by food service officer Robinson that he had been "laid in"[1] from work by Defendant Lawrence, pending the outcome of his misconduct hearing. Plaintiff attempted to explain that, under prison policy, he could only be laid in by the warden or his designee and only if he was deemed a threat to the safety or security of the

---

[1]The term "laid in" refers to a prisoner being temporarily suspended from his prison job assignment. Prisoners charged with misconducts may be laid in pending the misconduct hearing. MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶ AA (eff. Nov. 1, 2010) (superseded).

prison, citing MICH. DEP'T OF CORR., Policy Directive 05.01.100. Plaintiff therefore contended that his lay-in was in violation of MDOC policy. Robinson reportedly stated, "It was not my choice, it was the Assistant Director Lawrence's call." (*Id.*, ¶ 10, Page ID#8.) Plaintiff complains that he never received a written notice from the classification director that he was being laid in at that time.

On April 16, 2011, Plaintiff wrote a complaint to Deputy Warden Hoffner regarding Defendant Lawrence's allegedly improper application of MDOC policy. On April 18, 2011, while he was going through the food line, Plaintiff spoke with Defendant Lawrence, asking, "Why am I being removed from my job, against the dictates of policy. Surely, I'm not a threat to the safety and security of the facility." (*Id.*, ¶13.) Lawrence replied, "Well Mr. Burke, you writing and complaining up front (i.e., Deputy Warden's Office), didn't make your situation any better." (*Id.* at ¶ 14.) Later that day, Plaintiff received a copy of a Prisoner Program Work Assignment Evaluation notice dated April 18, 2011, reiterating what he had been told by Robinson on April 16 – that he was being laid in "pending outcome of said ticket." (*Id.*) The report was signed by Defendants O'Dell and Lawrence.

On April 21, 2011, Plaintiff received a Prisoner Program Work Assignment Evaluation, recommending that he be terminated from food service, because he had been found guilty of misconduct. The notice was signed by Defendants Whitehead and Lawrence. (*Id.*, ¶ 17, Page ID#9.) Later that day, Plaintiff received a notice from Defendant Classification Director Mittlestadt, informing him that he was being permanently removed from the food service hiring pool because he had two or more guilty findings on theft misconduct charges while employed in food service. (*Id.*, ¶ 18; *see also* Ex. A5 to Aff., Page ID#17.) Plaintiff complains that his termination was in violation of policy and that he had no prior notice that he could be permanently removed from

food service employment for two theft misconducts. He also alleges that Defendants' actions were taken in order to eliminate Plaintiff's eligibility for bonus pay, which was no longer available to food service employees hired after December 4, 2008. In addition, he contends that he was terminated in retaliation for his April 16, 2011 complaint to Deputy Warden Hoffner about how the classification policy was being applied.

Plaintiff filed a Step I grievance on April 25, 2011, alleging that Defendants had conspired with one another to retaliate against him. On May 27, Defendant Classification Director Mittlestadt posted a memorandum notice to all prisoners, which stated that "any prisoner found guilty of a misconduct for theft while on food service assignment, will never be hired back at LCF." (*Id.*, ¶ 24, Page ID#10.) Plaintiff complains that Defendant Lawrence knew that Plaintiff's job was very important to him and that Plaintiff used his wages to pay for his phone calls and to pay his attorney.

In his complaint, Plaintiff asserts that Defendants' actions violated his right to petition the government under the First and Fourteenth Amendments of the United States Constitution and under the Petition Clause of the Michigan Constitution, MICH. CONST. 1963, art. 1, § 3. He also alleges that Defendants' actions amounted to gross negligence and intentional infliction of emotional distress under state law. For relief, Petitioner seeks a declaratory judgment, together with compensatory and punitive damages.

  II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Due Process and Conspiracy

In its earlier opinion dismissing the case for failure to state a claim, the Court held that Plaintiff had failed to state a due-process claim, a conspiracy claim, and a retaliation claim. The Sixth Circuit affirmed the dismissal of the due-process claim. The court also affirmed this Court's determination that Plaintiff's allegations of conspiracy were merely vague and conclusory and failed adequately to allege that Defendants Lawrence, O'Dell, Whitehead, and Mittlestadt "had a common plan and 'general conspiratorial objective' to terminate Burke and remove him from the food service pool in retaliation for filing the Hoffner complaint." *Burke v. Lawrence et al.*, No. 11-2418, slip op. at 4 (6th Cir. Jun. 26, 2012) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). In accordance with the Sixth Circuit's order, Plaintiff's due process and conspiracy claims will be dismissed.

### B.   Retaliation

As discussed, this Court dismissed Plaintiff's retaliation claim against all Defendants. On appeal, however, the Sixth Circuit held that that three facts, taken together, were sufficient "to establish that adverse action was taken against [Plaintiff], at least in part, because of his protected conduct":

> (1) the temporal proximity between the April 16, 2011, Hoffner complaint; the April 18, 2011, termination; and the April 21, 2011, ban from the re-hiring pool; (2) a statement that Lawrence made to Burke regarding Burke's suspension, indicating that the Hoffner complaint "didn't make [Burke's] situation any better[";] and (3) the re-hiring of several inmates who, like Burke, had been convicted of theft.

*Id.*, slip op. at 3.

As discussed by this Court in its prior decision and by the Sixth Circuit in its order, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the

Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394; *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

While temporal proximity may, in some circumstances, be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory

motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner*, 89 F. App'x at 580.

Both this Court and the Sixth Circuit concluded that Plaintiff had adequately alleged the first two prongs of a retaliation claim. As a consequence, only the third prong, retaliatory motive, was in issue for either court's analysis. The Sixth Circuit held that Plaintiff had stated a claim of retaliation. The court, however, did not distinguish among the individual Defendants in its analysis. Nor did the court recite a detailed chronology of Plaintiff's claim. That chronology, however, is critical in determining how the Sixth Circuit's holdings may be applied to the individual Defendants.

In his own recitation of the events, Plaintiff acknowledges that he was issued a misconduct ticket for theft on April 15, 2011, on which he ultimately was convicted. Plaintiff does not dispute that he committed the misconduct or that it was his second theft misconduct while working in food service. On the morning of April 16, 2011, Plaintiff was informed by Officer Robinson that Lawrence had suspended Plaintiff from his food-service position, pending the outcome of the misconduct charge. Plaintiff's first alleged protected conduct – the writing of the complaint to Assistant Deputy Warden Hoffner – did not happen until later in the day on April 16, after Plaintiff had been verbally informed of his suspension. In the complaint to Hoffner, Plaintiff mentioned only Lawrence as the subject of his complaint. On April 18, Lawrence told Plaintiff that his complaining did not help his situation. Also on April 18, a Prisoner Program and Work Assignment Evaluation was completed and signed by both O'Dell and Lawrence, formalizing the action Lawrence had taken on April 15, 2011, about which Plaintiff complained. Plaintiff was found guilty of the theft misconduct, and, on April 21, 2011, Defendants Whitehead and Lawrence signed

the Prisoner Program and Work Assignment Evaluation recommending that Plaintiff be terminated because he had been found guilty of theft.  Later, on April 21, 2011, Plaintiff received a notice from Defendant Mittlestadt that he had been permanently removed from the food service hiring pool because he had two or more guilty findings on theft misconduct tickets while employed in food service.

1. Defendant O'Dell

Plaintiff alleges that Defendant O'Dell signed the Prisoner Program and Work Assignment Evaluation that formally suspended Plaintiff pending the result of the misconduct charge.  He alleges that O'Dell's action was retaliatory.  The mere fact that the formal notice of the suspension was signed by O'Dell and Lawrence after Plaintiff had complained cannot support a conclusion that O'Dell's and Lawrence's original decision to suspend Plaintiff was retaliatory, because Plaintiff already had been verbally informed of his suspension prior to his protected conduct. Indeed, it was the action of suspending Plaintiff that was the subject of Plaintiff's complaint to Hoffner.

Moreover, even assuming that the formal suspension has any evidentiary value with respect to Lawrence's retaliatory motivation, it cannot provide evidence that O'Dell acted with such motivation.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 566 U.S. at 676.  Because the Sixth Circuit agreed that Plaintiff's allegations fell far short of demonstrating a common plan between O'Dell and Lawrence to retaliate, Lawrence's motivation may not be attributed to O'Dell on the basis that they shared a common plan.  Lawrence reportedly was the source of the original verbal decision to suspend plaintiff, Lawrence is the only person named in Plaintiff's complaint to Hoffner,

and Lawrence is the only person alleged to have made a "retaliatory" comment to Plaintiff. Plaintiff makes no factual allegations linking O'Dell to Plaintiff's complaint against Lawrence. As a result, no evidence exists that O'Dell signed the suspension evaluation with a retaliatory motive. Since Plaintiff makes no other allegation against O'Dell, Plaintiff's retaliation claim against O'Dell must be dismissed.

### 2. Defendant Whitehead

The only allegation made against Defendant Whitehead is that Whitehead provided the second signature on the April 21, 2012 Prisoner Program and Work Assignment Evaluation that recommended Plaintiff be terminated and reclassified. Again, because the Sixth Circuit has found that Plaintiff failed to allege a conspiracy between the Defendants, any fact suggesting that Lawrence may have had a retaliatory motive may not be attributed to Whitehead. In addition, Plaintiff makes no factual allegations linking Whitehead to Plaintiff's complaint about Lawrence. Absent an agreement to retaliate or specific factual allegations linking Whitehead to Plaintiff's complaint against Lawrence, Plaintiff fails to state a retaliation claim against Whitehead. *See Iqbal*, 566 U.S. at 676.

### 3. Defendant Mittlestadt

Plaintiff alleges that Defendant Mittlestadt issued the April 21, 2011 notice advising Plaintiff that he was being permanently removed from the food service hiring pool because he had two or more guilty findings on theft misconducts from food service.[2] Plaintiff makes no factual

---

[2] Plaintiff alleges that the sanction was inconsistent with MDOC policy and he was not given notice of the possible sanction, implying that he was denied due process by the reclassification. As previously discussed, the Court dismissed Plaintiff's due process claim for failure to state a claim, and the Sixth Circuit affirmed the dismissal.

allegation suggesting that Mittlestadt had a retaliatory motive or was even aware of Plaintiff's interaction with Defendant Lawrence. Again, given the dismissal of the conspiracy claim, Plaintiff may not attribute Lawrence's motivation to Mittlestadt. *See Iqbal*, 566 U.S. at 676.

Plaintiff also complains that Defendant Mittlestadt issued a notice to all prisoners on May 27, 2011, stating, "PER FOOD SERVICE, ANY PRISONER FOUND GUILTY OF A MISCONDUCT FOR THEFT WHILE ON HIS FOOD SERVICE ASSIGNMENT WILL NOT BE HIRED BACK IN FOOD SERVICE AT LCF." (Ex. A-6 to Compl., docket #2-6, Page ID#18.) Mittlestadt's issuance of a blanket notice of a policy change to all LCF prisoners in no way suggests that Mittlestadt was attempting to retaliate against Plaintiff or any other individual for the exercise of his First Amendment rights. On its face, the policy applies to all inmates who steal. Such a generalized consequence cannot indicate an intent to retaliate against a single individual. Further, as previously discussed, Plaintiff makes no factual allegation supporting his claim that Mittlestadt was aware of or shared any retaliatory motive that might be inferred against Lawrence. Accordingly, Plaintiff fails to state a claim against Defendant Mittlestadt.

### 4. Defendant Lawrence

In light of the Sixth Circuit's determination, the Court will order service of the retaliation claim on Defendant Lawrence.

### B. State-Law Claims

Plaintiff alleges that Defendants' conduct also violated state tort law. First, he claims that the actions amounted to an intentional infliction of emotional distress (IIED). Second, he claims that Defendants were grossly negligent in their actions.

1.    Intentional Infliction of Emotional Distress

An IIED claim consists of four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Dalley v. Dykema Gossett*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010). Additionally, liability has been limited to circumstances "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Auto–Owners Ins. Co.*, 374 N.W.2d 905, 908-09 (Mich. 1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "The second element of the tort of intentional or reckless infliction of emotional distress may be proved two ways. A plaintiff can show that a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that 'any reasonable person would know emotional distress would result.'" *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (quoting *Haverbush v. Powelson*, 551 N.W.2d 206, 210 (Mich. Ct. App. 1996)). Plaintiff's allegations fail to indicate that any Defendant engaged in outrageous and extreme conduct or caused Plaintiff severe emotional distress. Accordingly, Plaintiff fails to state an IIED claim.

2.    Gross Negligence

Plaintiff asserts that Defendants' actions constituted gross negligence under Michigan law. Defendants are prison officials who are entitled to immunity under MICH. COMP. LAWS § 691.1407(2), which provides, in relevant part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the officer [or]

> > employee . . . while in the course of employment . . . if all of the following are met:
> >
> > > (a) The officer . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
> > >
> > > (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> > >
> > > (c) The officer's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

*Id.*

Plaintiff fails to allege facts showing that Defendants acted outside the scope of their authority. Moreover, the operation and management of state prisons is clearly a governmental function. *See Spruytte v. Dep't of Corr.*, 266 N.W.2d 482, 483 (Mich. Ct. App. 1978) ("The operation and maintenance of a jail is a governmental function."). Finally, the third requirement is satisfied because the facts alleged in the complaint are not indicative of gross negligence on the part of any Defendant. Gross negligence is defined by the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a); *see also Jennings v. Southwood*, 521 N.W.2d 230, 235 (Mich. 1994) (recognizing the gross negligence standard delineated by statute). The complaint is devoid of allegations that suggest that Defendants were grossly negligent when they determined Plaintiff should be removed from his food service position after he was twice convicted of stealing from the food service department. Consequently, Plaintiff has not alleged conduct by Defendants that rises to the level of gross negligence, as that term is defined in the statute. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 801 (6th Cir. 2005) (finding that an officer who was unaware of the plaintiff's

condition was entitled to governmental immunity for a gross-negligence claim).  Thus, all of the requirements for statutory immunity are met with respect to Plaintiff's gross negligence claim against Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants O'Dell, Whitehead and Mittlestadt will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court further determines that Plaintiff's due-process, conspiracy, intentional-infliction-of-emotional-distress and gross-negligence claims will be dismissed for failure to state a claim against all Defendants.  The Court will serve the retaliation claim against Defendant Lawrence.

An Order consistent with this Opinion will be entered.


Dated: <u>August 2, 2012</u>              /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE